UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRISH CUNNINGHAM,

                Plaintiff,                    Case No. 2:21-cv-12459
                                              District Judge Terrence G. Berg
v.                                      Magistrate Judge Anthony P. Patti

CITY OF DETROIT, *et al*.,

                Defendant(s).

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART DEFENDANT CITY OF DETROIT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 7)

**I.**    **RECOMMENDATION**:  The Court should **GRANT IN PART** and **DENY IN PART** Defendant City of Detroit's motion for judgment on the pleadings (ECF No. 7).  In sum, the Court should **GRANT** the motion to the extent it seeks dismissal of:  **(A)** Plaintiff's claims against Defendants Buildings, Safety, Engineering and Environmental Department ("BSEED") and Office of Inclusion and Opportunity, *i.e.*, Civil Rights, Inclusion & Opportunity Department ("CRIOD"); and, **(B)** Plaintiff's Title VII religious discrimination and related hostile work environment claims for failure to exhaust administrative remedies. However, the Court should **DENY** the motion to the extent it seeks dismissal of: **(A)** Plaintiff's ADA disability discrimination and related hostile work environment

claims for failure to exhaust administrative remedies; and, **(B)** Plaintiff's federal claims as untimely under 42 U.S.C. §§ 2000e-5(f)(1).

If the Court accepts these recommendations, then the only remaining parties are Plaintiff Cunningham and Defendant City of Detroit, and the only remaining claims are Plaintiff's Title VII sex discrimination and related hostile work environment claims (as to which Defendants did not seek dismissal), Plaintiff's ADA disability discrimination and related hostile work environment claims, and any of Plaintiff's ELCRA claims over which the Court decides to exercise supplemental jurisdiction.

## II. REPORT:

### A. Background

Trish Cunningham initiated this verified complaint for employment discrimination on October 18, 2021, naming as Defendants the City of Detroit, the BSEED, and the CRIOD. (ECF No. 1.) Cunningham's alleged bases for jurisdiction are Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-17)), the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112 to 12117), and the Elliot-Larsen Civil Rights Act ("ELCRA") (Mich. Comp. Laws §§ 37.2101-37.2804), in particular discrimination based on gender/sex, religion, and

disability or perceived disability.  (ECF No. 1, PageID.3-4.)[1]  Accordingly, she

asserts jurisdiction based on 28 U.S.C. § 1331 ("Federal question").  (ECF No. 1,

PageID.28.)

Plaintiff alleges that the discriminatory conduct of which she complains

includes termination of her employment, unequal terms and conditions of her

employment, hostile work environment, constructive discharge, and disclosing

protected medical information (PMI).  (ECF No. 1, PageID.4.)  She alleges the

_____

[1] Prior to filing this lawsuit, Plaintiff marked "race" and "age" as bases for
discrimination in her March 6, 2019 CRIOD complaint and her November
18, 2019 EEOC intake questionnaire.  (ECF No. 8-2, PageID.147; ECF No.
8-1, PageID.104).  Although Plaintiff's October 2021 pleading mentions the
Age Discrimination Act on her Civil Cover Sheet, Plaintiff does not check
the "Age Discrimination in Employment Act of 1967" as a basis for
jurisdiction, nor does she check "race" or "age" as a basis for discrimination,
nor does she mark the form complaint's exhaustion-related age
discrimination question.  (ECF No. 1, PageID.3, 4, 24, 28.)  Looking past
form to substance, the record indicates that Plaintiff is white and was 55
years old when the discrimination allegedly began on August 1, 2016 (*see*
ECF No. 8-2, PageID.299), and Plaintiff refers within the body of her
complaint to the promotions of "a white man of similar age" and "a young
black woman," and to opportunities provided to "a young black male" and
"a young black man," and also claims to have heard her supervisor tell one
of them:  "You are doing their training right, I don't want Trish involved."
(*See id.*, PageID.18 ¶¶ 240, 241, 264, 265, 284).  However, while Plaintiff
points out the ages and races of people who were promoted or chosen ahead
of her, these are more conclusory allegations than they are allegations of
discriminatory motivation by Defendant City of Detroit on the basis of race
or age.  Moreover, neither party suggests in its briefing that race and age
claims are part of this case.  For these reasons, this report does not construe
Plaintiff's pleading as alleging a race or age discrimination claim.

discriminatory conduct occurred from August 1, 2016 (*i.e.*, the date on which she was invited to test) through either March 2019 (when she filed a complaint with CRIOD) or May 2019 (the alleged constructive discharge date).  (ECF No. 1, PageID.4-23 [Statement of Claim]; *see also* ECF No. 8-2, PageID.147-149; ECF No. 7-2, PageID.55.)  She provides two pages setting forth the "facts of [her] case . . . [,]" and an additional 339 numbered sentences of "chronology."  (*Id.*)

### B.   Instant Matter

Judge Berg has referred this case to me for pretrial matters.  (ECF No. 10.) Currently before the Court is Defendant City of Detroit's motion for judgment on the pleadings (ECF No. 7), as to which Plaintiff has filed a response (ECF No. 9).[2] Defendants have not filed a reply.  The Court will address *seriatim* each of Defendant City of Detroit's five arguments.

### C.   Discussion

Before proceeding with Defendants' specific arguments, it is important to address what Defendants do not challenge in this particular motion, namely Plaintiff's gender/sex discrimination and related hostile work environment claims

---

[2] Plaintiff's attachments to her initial February 28, 2022 filing (ECF No. 8), which was stricken by the Clerk of the Court for on the basis that it had "fillable fields," with direction that it must be "refiled correctly," were not re-filed with her corrected response.  The Clerk has since unsealed the exhibits.

(ECF No. 1, PageID.4), whether based on Title VII or the Elliot-Larsen Civil Rights Act (ELCRA).   In their motion for judgment on the pleadings, Defendants admit that the EEOC charge contains such allegations (ECF No. 7, PageID.43, 47, 48), they acknowledge that these claims appear within the pleading (*id.*, PageID.35 ¶¶ 4, 5; *id.*, PageID.43 ¶ 3; *id.*, PageID.45), but they only challenge the disability discrimination, religious discrimination, and related hostile work environment claims (*id.*, PageID.39, 42).   Additionally, Plaintiff clearly marked discrimination on the basis of sex and retaliation in Plaintiff's EEOC Charge No. 471-2020-00729 (ECF No. 7-2, PageID.55), which, as Plaintiff notes, is dated within 300 days of her alleged, constructive termination.   (ECF No. 9, PageID.317.)[3] (*See also* 42 U.S.C. § 2000e-5(e)(1).)   Accordingly, the Court should conclude that Plaintiff's sex discrimination and related hostile work environment claims survive the instant motion practice.

1.      **Whether Plaintiff's claims should proceed against BSEED and CRIO?**

The caption of Plaintiff's pleading lists three Defendants – the City of Detroit and two of its departments (BSEED and CRIOD).   (*See*

---

[3] The November 18, 2019 EEOC charge was filed within 258 days, if the constructive discharge occurred on March 5, 2019 (*see* ECF No. 1, PageID.4, 7), or within 197 days, if the constructive discharge occurred on May 5, 2019 (*see* ECF No. 1, PageID.23 ¶ 334; ECF No. 7-2, PageID.55).

https://detroitmi.gov/departments.)  However, "city departments are not separate

legal entities against which a suit can be directed."  *McGrew v. Duncan*, 333 F.

Supp. 3d 730, 744 (E.D. Mich. 2018), *aff'd in part, appeal dismissed in part and*

*remanded*, 937 F.3d 664 (6th Cir. 2019).  *See also Laise v. City of Utica*, 970 F.

Supp. 605, 608 (E.D. Mich. 1997) (Gadola, J.); *Michonski v. City of Detroit*, 162

Mich. App. 485, 490, 413 N.W.2d 438, 441 (1987).

Defendant City of Detroit moves for dismissal of BSEED & CRIO on this

basis (ECF No. 7, PageID.35, 45), and Plaintiff concedes it is proper to remove the

city departments from her complaint (ECF No. 9, PageID.317).  Accordingly, the

Court should dismiss the BSEED and the CRIO as Defendants.

## 2. Whether Plaintiff has exhausted her administrative remedies as to her ADA and Title VII claims?

As for exhaustion of federal administrative remedies, Plaintiff alleges she

filed a charge with the Equal Employment Opportunity Commission (EEOC) or

her Equal Employment Opportunity (EEO) counselor regarding this alleged

discriminatory conduct on August 27, 2019.  (ECF No. 1, PageID.24.)  However,

the pleading's reference to a Notice of Right to Sue letter dated July 19, 2021

clarifies that the corresponding EEOC Charge No. is 471-2020-00729, which was

presented to the EEOC on November 18, 2019.  (*Id*.; ECF No. 7-2.)  This charge

alleges discrimination from December 16, 2016 to May 6, 2019.  (ECF No. 7-2,

PageID.55.)[4]

### a.   Plaintiff's ADA <u>disability</u> discrimination and related hostile work environment claims

Acknowledging the employment-related ADA sections (*see* 42 U.S.C. §§

12111-12117), Plaintiff claims that Defendants discriminated against her based on

her disability or perceived disability, namely Myasthenia Gravis, "a chronic

autoimmune, neuromuscular disease that causes weakness in the skeletal muscles

that worsens after periods of activity and improves after periods of rest."  (*See* ECF

No. 1, PageID.3-4; https://www.ninds.nih.gov/myasthenia-gravis-fact-sheet (last

visited Nov. 14, 2022).)  "A plaintiff seeking to bring employment discrimination

claims under the ADA must first exhaust administrative remedies, and failure to

properly exhaust is an appropriate basis for dismissal of an ADA action."  *Jones v.*

*Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018) (citation omitted).  "To

properly exhaust administrative remedies under the ADA, a plaintiff must file a

charge of discrimination with the EEOC within 300 days of the alleged

discrimination."  *Jones*, 740 F. App'x 492-493 (citation omitted).  "A plaintiff

---

[4] Although Plaintiff's pleading mentions a "subsequent charge[,]" it seems to
be a reference to Plaintiff's March 6, 2019 CRIOD complaint form.  (ECF
No. 1, PageID.6; ECF No. 8-2, PageID.147-149.)

must then obtain a right-to-sue letter from the EEOC before she can bring suit

under the ADA." *Id.* (*See also* 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(e)(1).)

"'Federal courts do not have subject matter jurisdiction of [ADA] claims

unless [1] the claimant explicitly files the claim in an EEOC charge or [2] the

claim can reasonably be expected to grow out of the EEOC charge.'" *Perry v. Am.*

*Red Cross Blood Servs.*, 651 F. App'x 317, 324 (6th Cir. 2016) (quoting *Jones v.*

*Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (internal quotation

marks omitted)). As to the latter, "where facts related with respect to the charged

claim would prompt the EEOC to investigate a different, uncharged claim, the

plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho,*

*Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

### i.      The Charge of Discrimination

Here, Plaintiff's November 18, 2019 Charge of Discrimination (No. 471-

2020-00729) expressly mentions discrimination based on sex and retaliation. (ECF

No. 7-2, PageID.55.) Thus, as to this particular charge of discrimination, Plaintiff

did not "explicitly" file an EEOC charge based on disability. Indeed, Plaintiff did

not check the "disability" box. (*Id*.) Turning to the question of whether Plaintiff's

ADA disability claim "can reasonably be expected to grow out of" this particular

charge of discrimination, Defendant City of Detroit convincingly asserts that

"Plaintiff's ADA claims cannot reasonably have been expected to grow out of her

filed EEOC Charge." (ECF No. 7, PageID.47.) Not only was the "disability" box left unmarked, but also – consistent with having marked only the "sex" and "retaliation" boxes – Plaintiff's written statement addresses only these two bases. (ECF No. 7-2, PageID.55.) *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("The determinative inquiry . . . is whether Dixon alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form."). Defendant City of Detroit accurately states: "Plaintiff's statement did not allege sufficient facts that should have prompted the EEOC to investigate her ADA claims." (ECF No. 7, PageID.47.)

## ii.     The EEOC Intake Questionnaire

In her response, Plaintiff claims that she "raised the issue of disability with the EEOC as evidenced on Item 10 of [her] EEOC complaint form[,]" (ECF No. 9, PageID.317-318), which appears to be attached as Exhibit 1 to her initial response, *i.e.*, her EEOC Intake Questionnaire dated November 18, 2019 (*see* ECF No. 8-1 [4 pages]). On that form, when asked about the reason for her claim of discrimination, she checked "race," "sex," "age," and "disability," (*id.*, PageID.104); she also checked "Yes, I have a disability[;]" and, when asked, "What is the disability that you believe is the reason for the adverse action taken against you," Plaintiff answered, "I was not promoted to Mechanical Inspector, the

offer was withdrawn after I was questioned about my FMLA[,]" (*id*., PageID.105.)
In addition to the November 2019 intake questionnaire, Plaintiff refers to the
December 2018 interview for a mechanical inspector position as discussed in her
complaint, where she alleges she "was denied the opportunity to perform
Mechanical Inspections, at least in part because the intermittent nature of my leave
that could potentially interrupt scheduling[,]" (*see id*., PageID.21-22 ¶¶ 303-308).
(ECF No. 9, PageID.318.)

### iii.    The EEOC file

Plaintiff also contends that "[t]he records I reference are all part of the claim
I filed and should be part of the record."  (ECF No. 9, PageID.318.)  Perhaps this is
a reference to what seems to be her EEOC file.  (ECF No. 8-2 [195 pages].)
Plaintiff's myasthenia and/or FMLA are mentioned in:  (a) an August 28, 2018
instant message exchange (*id*., PageID.187); (b) what appears to be Plaintiff's
description of "[s]haring protected medical information [(PMI)] to prevent [her]
transfer" in December 2018 (*id*., PageID.239, 278); and, (c) a "BSEED Timeline,"
allegedly created "after being forced out of [her] job[,]" (*id*., PageID.217-221, 291-
295).  Additionally, disability is mentioned in:  (a) Plaintiff's March 6, 2019
CRIOD complaint form, which marks "disability" among the factors for
discrimination (*id*., PageID.147-149); (b) a September 18, 2019 letter from the
CRIOD regarding Plaintiff's February 4, 2019 complaint alleging discrimination

based on race, sex, age and disability as to respondent BSEED (*id*., PageID.151); and, (c) the EEOC Federal Investigator's February 27, 2020 letter regarding EEOC Charge No. 471-2020-00729, wherein the author refers to Plaintiff's March 6, 2019 written discrimination complaint with the CRIOD against VSEED based on "age, race, sex, and disability . . ." (ECF No. 8-2, PageID.133, 135).

### iv. Summation

While the November 18, 2019 EEOC Charge of Discrimination No. 471-2020-00729 does not allege disability as a basis for discrimination, the same-day questionnaire alleges disability as a basis for discrimination, and that basis is mentioned multiple times in what appears to be the EEOC file. In particular, the Court highlights the EEOC Federal Investigator's February 27, 2020 letter (ECF No. 8-2, PageID.133, 135) – an item that *post-dates* Plaintiff's November 18, 2019 EEOC Charge, suggesting that *disability may have been considered* by the EEOC in its investigation.

Defendant City of Detroit could have addressed these claims in a reply. It did not. Accordingly, based on the record before it, the Court should not conclude that Plaintiff failed to exhaust her administrative remedies as to her ADA disability discrimination and related hostile work environment claims.

**b.   Plaintiff's Title VII <u>religious</u> discrimination and related hostile work environment claims**

Acknowledging the EEOC-related sections of the Civil Rights Act (*see* 42 U.S.C. §§ 2000e - 2000e-17), Plaintiff claims that Defendants discriminated against her based on her religion, explaining that she does not participate in organized religion and was believed to be gay.  (ECF No. 1, PageID.3-4.)[5]  As the Sixth Circuit has explained in the context of a Title VII employment discrimination claim:

> A plaintiff must exhaust administrative remedies before filing suit in federal court.  . . . To properly exhaust, a plaintiff must:  (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter').

*Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (internal citations and quotations omitted).  "[F]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."

---

[5] Despite Plaintiff's passing mention that she was believed, perceived, or assumed to be gay, as well as her statement that the benefits "policies support [her] belief that it is not ok to be gay and work for the City of Detroit[,]" (*see id*., PageID.4, 6, 8, 10), and considering Plaintiff's references to a heterosexual marriage (*id*., PageID.10 ¶¶ 75, 83, PageID.22 ¶ 305), this report assumes that "sexual orientation" is not put forward as a basis for liability in this case.  Most significantly, her pleadings and forms do not overtly assert such a claim.

*Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).  *See also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge.").

Defendant City of Detroit argues that Plaintiff "never filed an EEOC Charge alleging religious discrimination and a related hostile work environment."  (ECF No. 7, PageID.48.)  For the reasons stated above as to disability, it is also true that the November 18, 2019 EEOC Charge of Discrimination (No. 471-2020-00729) does not allege religion as a basis for discrimination (ECF No. 7, PageID.55). And, this is supported by other items in the EEOC file, such as:  (a) Plaintiff's same-day questionnaire does not check "religion" as a basis for discrimination (ECF No. 8-1, PageID.104; ECF No. 8-2, PageID.251); and, (b) albeit in advance of filing her EEOC Charge, Plaintiff did not check "Religious Beliefs" on her March 6, 2019 CRIOD complaint form (*id.*, PageID.147-149).

In her response, Plaintiff acknowledges she "did not specifically use the term religion . . . [,]" but claims "it is reasonable that [her] claim has grown from the factual allegations in the EEOC charge."  (ECF No. 9, PageID.321.)  I acknowledge that Plaintiff's EEOC file contains a copy of an October 16, 2018

13

email, which she sent to three City of Detroit email addresses.  (ECF No. 8-2, PageID.188-189, 225-226; ECF No. 8-3, PageID.302-303.)  In this email, which concerns transfer, Plaintiff states, *inter alia*:  "Over the last two years living and working in the city[,] I have come to the obvious conclusion that a[n] unapologetically nonreligious and tolerant white woman over 50 with natural leadership ability and creative problem solving skills is someone who must be managed out."  (*Id*.)  Plaintiff refers to this particular email in her response, when she argues that her "claim of religious discrimination has grown from [her] charge of sex discrimination and retaliation."  She contends that certain circumstances, including "being forced out of a job . . . [,]" clouded her ability to think and that, "[a]t the time of [her] filing, [she] did not have a clear understanding of exactly why [she] was forced out of [her] job."  (ECF No. 9, PageID.320.)

However, even if Plaintiff's review of the EEOC record – presumably in advance of filing her lawsuit – prompted her to include claims of religious discrimination and related hostile work environment (*see id*., PageID.320), the seemingly sole item in the EEOC file that mentions religion – *i.e.*, the October 16, 2018 email, seemingly sent to three City of Detroit employees – *pre-dates* the November 18, 2019 EEOC Charge in question.  Thus, the October 16, 2018 email *does not suggest that religion was considered by the EEOC* in its investigation.  Accordingly, based on the record before it, the Court should conclude that Plaintiff

14

failed to exhaust her administrative remedies as to her Title VII religious

discrimination and related hostile work environment claims.

> **3.     Whether Plaintiff has failed to state a claim of <u>religious</u> <u>discrimination and hostile work environment under <u>Title</u> <u>VII</u> or <u>ELCRA</u>?**

This report assumes that Plaintiff's religious discrimination claims are based

on the EEOC-related sections of the Civil Rights Act (*see* 42 U.S.C. §§ 2000e -

2000e-17), as well as the ELCRA (*see* Mich. Comp. Laws §§ 37.2101-37.2804),

perhaps including its prohibition against an employer's discrimination on the basis

of marital status (Mich. Comp. Laws § 37.2202).  (ECF No. 1, PageID.3-4.)  In her

complaint, Plaintiff explains that she did not participate in organized religion and

was believed to be gay.  (*Id.*, PageID.4.)  She also alleges, *inter alia*:

- The antiquated requirements the City of Detroit used for benefits qualification not only denies coverage for same sex spouses and civil unions [but also] requires employees be married to their spouse and provide a copy of the license to obtain benefits.

- I strongly disagreed with this religious bias when I was forced to marry my partner of 10 years to obtain health insurance for his upcoming surgery.

(ECF No. 1, PageID.10 ¶¶ 82, 83.)  Thus, to a certain extent, Plaintiff correctly

notes her *complaint* "raises the issue of religion."  (ECF No. 9, PageID.321.)

Defendant City of Detroit argues that Plaintiff has failed to state a claim of

religious discrimination and hostile work environment under Title VII or the Elliot-

Larsen Civil Rights Act (ELCRA) (ECF No. 7, PageID.49), and Plaintiff has filed an argument in response (ECF No. 9, PageID.320-321). However, if the Court agrees that Plaintiff has failed to exhaust her administrative remedies as to her Title VII religious discrimination and related hostile work environment claims, then it need not consider whether Plaintiff has stated such a claim in her pleading.

As for Plaintiff's ELCRA claims, "the ELCRA does not require exhaustion of administrative remedies." *Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *5 (6th Cir. Feb. 7, 2022) (referencing Mich. Comp. Laws § 37.2202). Therefore, if the Court agrees with the Undersigned's recommendation that certain federal claims survive, then judicial economy favors exercising supplemental jurisdiction over any of the pleading's ELCRA claims. However, if the Court determines that all federal claims should be dismissed, then the Court may decline to exercise supplemental jurisdiction over the ELCRA claims. (*See* 28 U.S.C. § 1367(c).)

### 4. Whether Plaintiff's federal claims should be dismissed because Plaintiff failed to file her action within 90 days as prescribed by 42 U.S.C. §§ 2000e-5(f)(1)?

Assuming that Plaintiff properly exhausted her EEOC remedies, Defendant City of Detroit argues that Plaintiff's federal claims should be dismissed as untimely under 42 U.S.C. §§ 2000e-5(f)(1). (ECF No. 7, PageID.49-51.) The EEOC issued a Notice of Right to Sue letter on Monday, July 19, 2021. (ECF No.

16

1, PageID.26-27; ECF No. 7-3, PageID.57-58.)  The EEOC Dismissal and Notice of Rights letter explains that a related lawsuit "must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost[,]" although it also explains that "[t]he time limit for filing suit based on a claim under state law may be different."  (*Id*.)  (*See* 42 U.S.C. § 2000e-5(f)(1) ("within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . .").

Plaintiff alleges in her pleading that she received the Notice of Right to Sue letter on July 19, 2021 (ECF No. 1, PageID.24), the same day it was issued. Ninety days from Monday, July 19, 2021 is Sunday, October 17, 2021.  Defendant City of Detroit contends that "even one day's delay is fatal to a claim[,]" (ECF No. 7, PageID.50), but the Federal Rule of Civil Procedure for computing time expressly provides that, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  Plaintiff addresses this predicament in her response.  (ECF No. 9, PageID.322.)  Accordingly, Defendant is not entitled to relief based on its argument that Plaintiff's complaint, which was presented to the Clerk of this Court on Monday, October 18, 2021, is one day late.

17

Notwithstanding Plaintiff's allegation that she received the Notice of Right to Sue letter on the date it was issued (ECF No. 1, PageID.24), she subsequently clarifies that she did not receive the notice on July 19, 2021 and further explains:

> On July 20, 2021[,] I received a call from Goldstar Law and[,] when I returned the call[,] Ashley told me that the right to sue letter had arrived.

> Additionally, had the Right to Sue letter been mailed to me on July 19, 2021[,] I would have been expected to receive the letter within 3 days or July 22, 2021.  The filing deadline could have been extended 3 days and the filing period extended to 93 days after issuance.

(ECF No. 9, PageID.323.)[6]  Presumably, Plaintiff is referring to the three-day period discussed in Fed. R. Civ. P. 6(d) ("Additional Time After Certain Kinds of Service.") and perhaps even asking the Court to assume she received the letter on July 22, 2021, such that her 90-days expired on Wednesday, October 20, 2021.

However, "there is a rebuttable presumption that mail is received by the person to whom it is addressed and that the 90–day limit commences five days after the right to sue letter is mailed." *Rucker v. Potter*, 215 F. App'x 406, 408 (6th Cir. 2007).  Thus, considering that the letter appears to have been mailed to Plaintiff, with copies to her counsel and counsel for the City of Detroit (ECF No. 7-3, PageID.57), Plaintiff is presumed to have received the letter by Saturday, July

---

[6] Attached to Plaintiff's initial response are copies of communications from or with Gold Star Law (ECF No. 8-4) and copies of e-mails with the Court's Pro Se Case Administrator (ECF No. 8-5).

24, 2021.  Ninety days from that day is Friday, October 22, 2021, which is significant here.  Defendant City of Detroit alternatively argues that Plaintiff's federal action was untimely, because she "failed to pay the required filing fee within ninety days of receipt of her right-to-sue letter."  (ECF No. 7, PageID.49-51.)  While Plaintiff's complaint was submitted on Monday, October 18, 2021, the Clerk promptly issued a deficiency notice to Plaintiff, explaining that her initiating document was filed without any form of payment or an application to proceed *in forma pauperis*.  Plaintiff's $402.00 filing fee was received on October 22, 2021.  Thus, even though "it is proper for a district court to deem a complaint 'filed' only when IFP status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court[,]" *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998), the receipt of Plaintiff's filing fee on October 22, 2021 renders her complaint timely under 42 U.S.C. § 2000e-5(f)(1).  Having reached this conclusion, the Court need not address Plaintiff's equitable tolling argument.  (ECF No. 9, PageID.324.)

    **D.    Conclusion**

    As set forth in detail above, the Court should **GRANT IN PART** and **DENY IN PART** Defendant City of Detroit's motion for judgment on the pleadings (ECF No. 7).  In sum, the Court should **GRANT** the motion to the extent it seeks dismissal of:  **(A)** Plaintiff's claims against Defendants BSEED and

CRIOD; and, **(B)** Plaintiff's Title VII religious discrimination and related hostile work environment claims for failure to exhaust administrative remedies. However, the Court should **DENY** the motion to the extent it seeks dismissal of: **(A)** Plaintiff's ADA disability discrimination and related hostile work environment claims for failure to exhaust administrative remedies; and, **(B)** Plaintiff's federal claims as untimely under 42 U.S.C. §§ 2000e-5(f)(1).

If the Court accepts these recommendations, then the only remaining parties are Plaintiff Cunningham and Defendant City of Detroit, and the only remaining claims are Plaintiff's Title VII sex discrimination and related hostile work environment claims (as to which Defendants did not seek dismissal), Plaintiff's ADA disability discrimination and related hostile work environment claims, and any of Plaintiff's ELCRA claims over which the Court decides to exercise supplemental jurisdiction.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 16, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE